# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:17-CV-00018-GCM

| | |
|---|---|
| JANIE TILSON, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| EVERY DAY IS A HOLIDAY, INC., GARY SPANGLER & TODD GREAR | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon the Defendants' Motion to Dismiss. Doc. No. 11. Plaintiffs have filed a response memorandum and defendants have filed a reply memorandum. This matter is now ripe for disposition.

## I. BACKGROUND

On January 13, 2017, Plaintiff filed a complaint against Every Day is a Holiday, Inc. d/b/a Centurion Stone of the Carolinas ("Centurion"), Gary Spangler ("Spangler"), and Todd Grear ("Grear"), (collectively "Defendants"). The complaint alleges claims for direct sexual harassment, hostile work environment, and retaliation under Title VII, intentional infliction of emotional distress, sexual assault and battery, conversion, invasion of privacy, and breach of contract. Compl. ¶¶ 115-63. Plaintiff's allegations arise out of Plaintiff's past romantic relationship with Defendant Spangler, which Plaintiff claims ended after a pattern of alleged sexual misconduct and behavior by Defendant Spangler. Compl. ¶¶ 3 & 22.

Defendant Centurion is a North Carolina corporation owned by Defendant Spangler and Defendant Grear with its principal place of business in Mecklenburg County, North Carolina.

Compl. ¶ 5. Defendant Spangler is majority owner of Defendant Centurion and is Defendant Centurion's Chief Executive Officer. Compl. ¶ 6. Defendant Grear is minority owner of Defendant Centurion and is Defendant Centurion's President. Compl. ¶ 7. Defendants Spangler and Grear are the only two owners of Defendant Centurion. Compl. ¶¶ 6-7. Plaintiff previously worked as a sales representative for Defendant Centurion in its Mecklenburg County office. Compl. ¶ 15.

From around August 2005 until February 2015, Plaintiff and Defendant Spangler maintained a romantic relationship. Compl. ¶¶ 12 & 18. On or about September 2006 Plaintiff began working for Defendant Spangler and Centurion. Compl. ¶ 14. Upon the cessation of their romantic relationship, Plaintiff contends Plaintiff and Defendant Spangler entered into an agreement, whereby Defendant Spangler would pay Plaintiff Nineteen Thousand Dollars ($19,000.00) in multiple installments in exchange for "certain[] contribut[ions] to [Defendant Spangler's] life" provided during their prior relationship. Comp. Exh. G. Defendant Spanglar made 2 of the 9 monthly payments required by the contract. Compl. ¶ 25. From February 2015 to October 2015, Plaintiff alleges that Defendant Spangler engaged in harassing conduct towards Plaintiff and threatened to fire or demote Plaintiff if she refused his advances. Compl. ¶¶ 37, 41, 51, & 54.

Plaintiff alleges that she informed Defendant Grear of said conduct. Compl. ¶ 38. In response to the alleged disclosure, Plaintiff alleges that Defendant Grear "did not say anything," "did not take any action," and "shrugged his shoulders." Compl. ¶ 39.

Plaintiff and Defendant Spangler reconciled in August 2015. Compl. ¶ 39. After this reconciliation, on August 23, 2015, Plaintiff alleges Defendant Spangler forced her to have sex. Compl. ¶ 74-77. Defendant Spangler and Plaintiff went on a trip to Japan in September 2015

2

during which Plaintiff alleges Spangler forced her to have sex. Compl. ¶ 79. Following that trip, on or about September 2015, Plaintiff and Defendant Spangler ended their reconciled personal relationship. Compl. ¶ 82.

After the relationship was ended in September 2015, Plaintiff alleges Defendant Spangler engaged in additional misconduct, including sending Plaintiff nude photos of herself that he had previously obtained. Compl. ¶¶ 84-85. Part of this course of misconduct allegedly included threatening Plaintiff's job and status at Defendant Centurion and resulted in Plaintiff allegedly suffering from "high anxiety, stress and high blood pressure," requiring medical treatment. Compl. ¶¶ 88 & 92.

After four days of being on medical leave, on or about October 2015, Plaintiff alleges she was terminated from her employment at Centurion and that Defendants Spangler and Grear demanded return of all Centurion-owned property in Plaintiff's possession with which Plaintiff complied. Compl. ¶¶ 97-99. Plaintiff alleges the reason for termination was her refusal to have a personal relationship with Defendant Spangler. Compl. ¶ 100. Defendants deny that Plaintiff was ever terminated by Centurion. Compl. ¶ 102.

Plaintiff filed her First EEOC Charge on December 14, 2015. Compl. ¶ 101. Plaintiff filed a Second EEOC Charge on September 19, 2016. Compl. ¶ 107.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting from *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, "[a] court is not required to accept [t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.*

### III. DISCUSSION

The Defendant's Motion to Dismiss is a partial motion to dismiss. It asks the Court to dismiss the following claims: Count I, Title VII direct sexual harassment; Count III, Title VII retaliation claim as to Defendants Spangler and Grear; Count IV, intentional infliction of emotional distress as to Defendants Centurion and Grear; Count VII, invasion of privacy; and Count VIII, breach of contract. The Court will analyze each of these claims below.

#### a. Count I – Direct Sexual Harassment

Plaintiff's first claim is titled "Title VII - Direct Sexual Harassment" and is brought against Defendant Centurion. Title VII recognizes two forms of sexual harassment; they are commonly referred to as quid pro quo and hostile workplace harassment. *Katz v. Dole*, 708 F.2d 251, 254 (4th. Cir. 1983).

The Defendants argue this claim should be dismissed because (1) the claim of "direct sexual harassment" cannot be brought under Title VII and (2) the claim as described by the Plaintiffs is wholly duplicative of Plaintiff's Title VII claims for hostile work environment.

First, the Court will consider whether the heading of the Plaintiff's claim is a fatal flaw. The Court does acknowledge that the form of sexual harassment alleged by the Plaintiff is most commonly referred to as "quid pro quo." *See, e.g. McKinnish v. Donahoe*, 40 F.Supp.3d 689, 697 (W.D.N.C. 2014). Yet, past courts have used the term "direct sexual harassment" to refer to this claim and have described quid pro quo harassment as direct sexual harassment. *See, e.g.*,

*Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 188 (2d. Cir. 2001) ("Two forms of sexual harassment are recognized under Title VII: direct discrimination (the so-called "quid pro quo" variety) . . . and "hostile workplace environment" harassment"); *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 720 (4th Cir. 2007) (distinguishing between direct harassment as evidence for quid pro quo claim and indirect harassment as evidence for hostile work environment claim).

While Plaintiff did not identify its claim using the most commonly used term, "quid pro quo," the heading of Count I "Title VII – Direct Sexual Harassment" is sufficient to identify its claim in Count I as it points both towards the statute the Plaintiff claims Defendant Centurion violated and adequately describes the type of harassment alleged in the claim. Since "quid pro quo" sexual harassment is the most commonly used term in reference to the violation alleged by the Plaintiff in Count I, this is the term the Court will use in the remainder of this Order.

The Court next turns to whether the Plaintiff alleged the correct elements for a quid pro quo sexual harassment claim under Title VII in her complaint. Quid pro quo harassment is "harassment in which a supervisor demands sexual consideration in exchange for job benefits." *McKinnish v. Donahoe*, 40 F.Supp.3d 689, 697 (W.D.N.C. 2014) (quoting *Katz*, 708 F.2d at 254 (internal quotation marks omitted). This can also include "the taking of adverse employment action against an employee who refuses to submit to the supervisor's sexual advances. *Id.* (citing *Sparks v. Pilot Freight Carriers, In.c*, 830 F.2d 1554 (11th Cir. 1987). To prove quid pro quo liability, the plaintiff must show "that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." *Moser v. MCC Outdoor, L.L.C.*, 2007 WL 4270877 at *9 (4th Cir. 2007). (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 745, 753 (1998) (internal quotation marks omitted).

5

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 485, 448 (4th Cir. 2011) (citations omitted). In the Plaintiff's Complaint, she alleges "[i]n response to Plaintiff's refusal to have sexual intercourse Spangler informed Plaintiff that she was fired and he was calling Grear to let him know" and "stated to Plaintiff, 'You are Fucked, Don't bother coming to work.'" Compl. ¶¶ 34, 37. In addition, Plaintiff alleges that in retaliation for Plaintiff "refusing to renew her sexual relationship with Spangler", Spangler and Grear demoted her and took away her company vehicle and accrued and unused comp time, *Id.* at ¶¶ 54, 55, as well as that "Spangler and Grear terminated her employment as a direct result of Plaintiff refusing to continue a personal relationship with Spangler and refusing to have sex with Spangler." *Id.* at ¶ 100. These facts were incorporated and re-alleged under Plaintiff's direct sexual harassment claim. *Id.* at ¶ 115.

The numerous allegations outlined above are sufficient to plausibly state the claim that "a supervisor demand[ed] sexual consideration in exchange for job benefits." *McKinnish*, 40 F.Supp.3d at 697 (internal citation omitted). Therefore, the Defendants' motion to dismiss Count I is denied.

### b. Count III – Retaliation

There are three elements for a plaintiff to establish a prima facie Title VII retaliation claim: "(1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting *Boyer-Libreto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). The statute does not define the term "agent." The Fourth Circuit has held that Title VII cannot be applied to individuals and that "the inclusion of agent in Title VII's definition of employer [is] simply to establish a limit on an employer's liability for its employees' actions." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).

Plaintiff brought Title VII retaliation claims against Defendants Spangler, Grear, and Centurion. However, Defendants Spangler and Grear are individuals, not employers. (*See* Compl. ¶¶ 6-7). Plaintiff concedes that this is correct and that her Title VII retaliation claims against Defendants Spangler and Grear fail as a matter of law. Doc. No. 14 at 4.

For these reasons, Count III, Plaintiff's claim for retaliation under Title VII is partially dismissed as against Defendants Spangler and Grear.

Defendants then move in their Reply brief for attorney's fees for Defendants Grear and Spangler, for defending themselves from this claim. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Fourth Circuit precedent is clear that Title VII only applies to employers, Plaintiff concedes as much in her response brief, and yet Plaintiff brought retaliation claims under Title VII against the individuals Defendants Grear and Spangler. Under Title VII bad faith is not a requirement for an award of attorney's fees. *See id.* It does appear to the Court that this claim was brought without any foundation by the Plaintiff. Therefore, Defendants Grear and Spangler

are entitled to their reasonable attorney's fees only as to Plaintiff's Count III, the retaliation claim brought under Title VII.

### c. Count IV – IIED

Defendant has also moved for dismissal of the Plaintiff's claim for intentional infliction of emotional distress (IIED) as to Defendant Grear and Centurion.

The elements of an action for IIED are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." See *Hogan v. Forsyth Country Club*, 340 S.E.2d 116, 119 (1986). The standard in North Carolina for what constitutes extreme and outrageous behavior is "a stringent one." *Waddle v. Sparks*, 331 N.C. 73, 83 (1992). "To meet the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community." See *Wagoner v. Elkin City Schools' Bd. of Educ*. 113 N.C.App. 579, 586, (1994).

The Court will first examine the IIED claim against Defendant Grear. Plaintiff asserts that the following conduct is extreme and outrageous: (1) "Grear accompanied Spangler to Plaintiff's apartment and informed her that she was being demoted and took her company vehicle and accrued comp time;" (2) "Grear, with Spangler, forced Plaintiff to sign a non-compete under duress and subjected her to 1.5 hours of yelling while she cried;" and (3) "Spangler and Grear terminated her employment because of Plaintiff's refusal to have sex with Spangler." (Doc No. 14 at 7-8). The second allegation however, in the Complaint, only said that "Spangler yelled at Plaintiff" and that Grear simply was there at the time of this supposed incident. (Compl. ¶ 63). These allegations are simply insufficient to plausibly state an IIED claim against Defendant Grear because these facts fall far short of extreme and outrageous conduct.

"When North Carolina courts have held conduct in the employment context to be 'extreme or outrageous,' the conduct at issue tends to be that of the defendant who directly harassed the plaintiff." *Alexander*, 2014 WL 502496, at *15. All Plaintiff alleges in her Complaint is that Defendant Grear fired her and failed to intervene allowing her to remain in the same environment and close proximity to Defendant Spangler, even following her purported complaints to Defendant Grear. This conduct is not extreme and outrageous as a matter of law. *See, e.g. Alexander v. Diversified Ace Services II, AJV*, 2014 WL 502496 at *16 (M.D.N.C. 2014) (ruling that corporate defendant's actions (or inactions) did not rise to the level of liability under a claim of IIED by "requir[ing] Plaintiff to continue to work with her abuser, threaten[ing] her, and fir[ing] her for reporting the abuse she had suffered"); *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004) (ruling that an alleged "campaign of sexual harassment" followed by discharge in retaliation for complaining about the sexual harassment was not extreme and outrageous); *Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 635–36 (M.D.N.C. 2000) (ruling that creating a hostile work environment and discharge in retaliation for exercising Title VII rights, among other conduct, was not extreme and outrageous to support a claim for IIED under North Carolina law).

Furthermore, termination or demotion, on their own, is not considered extreme and outrageous conduct. *See, Thomas v. N. Telecom, Inc.*, 157 F.Supp.2d 627, 635-36 (M.D.N.C. 2000) (holding that creating a hostile work environment and discharge in retaliation for exercising Title VII rights, among other conduct, was not extreme and outrageous to support a claim for IIED under North Carolina law). Plaintiff provides no case law supporting IIED liability for wholly passive conduct and termination.

Plaintiff appears to seek at times to impute liability for Defendant Spangler's alleged actions to Defendant Grear. But Grear is not Spangler's employer in any context and, without that relationship, this claim under respondeat superior must fail. *See Creek ex rel. Morgan v. N.C. Dept. of Health and Human Services*, 566 S.E.2d 832, 834 (N.C. Ct. App. 2002) ("Fundamental to the application of the doctrine of respondeat superior is the requirement that there be an employer-employee relationship between the parties."). Consequently, Plaintiff has failed to allege sufficient facts to plausibly state an IIED claim against Defendant Grear.

As for Defendant Centurion, under the theory of respondeat superior, an employer may be liable for an employee's tortious conduct in three circumstances: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal." *Hogan*, 340 S.E.2d at 121. Plaintiff contends that Defendant Centurion is vicariously liable for Defendant Spangler's IIED because Defendant Spangler's actions were committed within the scope of his employment and were ratified by Defendant Centurion. However, Defendants argue that this ratification theory was never pled in the complaint and the Plaintiffs in fact only claimed in the complaint that Defendant Centurion is vicariously liable for Defendant Spangler's IIED because Defendant Spangler was acting within the scope of his employment.

The Court first considers whether Defendant Spangler's alleged acts were committed within the scope of employment and in furtherance of Centurion's business as this is the argument both parties agree was made by the Plaintiff in her complaint. "Intentional tortious acts are rarely considered to be within the scope of an employee's employment." *Medlin v. Bass*, 398 S.E.2d 460, 464 (1990). To determine whether an employee's act applies, the Court must

determine whether the act was "a means or method of doing that which the employee was employed to do." *Phelps v. Vassey*, 437 S.E.2d 692, 694 (1993) (quoting *Hogan*, 340 S.E.2d at 122). But, the act is not within the scope of employment "if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own." *Id*. at 694-95. "[I]f the intentional tort is committed, not as a means or for the purpose of performing the work the employee was employed to do, but instead 'in a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own, then the [employer] is not liable.'" *Alexander*, 2014 WL 502496 at *16 (quoting *Medlin*, 398 S.E.2d at 464).

While some of Defendant Spangler's alleged tortious conduct was committed while he was working, the Plaintiff has not alleged sufficient facts to contend that Defendant Spangler was acting within the scope of his employment. Plaintiff does not contend that Defendant Spangler's sexual harassment of Plaintiff was done to accomplish his supervisory role. Instead, Plaintiff argues that since Defendant Spangler is the majority owner of Defendant Centurion, he decided what he was employed to do and therefore all his tortious actions were committed within the scope of his self-defined employment. Plaintiff points to no case law to support this argument. If taken to its logical conclusion, this reasoning would make a corporate defendant liable for any and all action of a majority owner. Defendant Spangler's alleged tortious actions were done for his own independent, personal propose. Since these actions could not plausibly advance a purpose for the corporate Defendant Centurion, the alleged acts were beyond the scope of Defendant Spangler's employment as a matter of law.

However, Plaintiff also contends that she alleged that Defendant Centurion was vicariously liable through the ratification theory. In her IIED claim against all Defendants, Plaintiff does specifically make allegations against "Corporate Defendant Centurion" in

11

paragraph 135 saying "Corporate Defendant Centurion is liable for the acts of its owners and managers in the course and scope of their employment regarding an employee of said Defendant." This allegation clearly points to the scope of employment theory of vicarious liability and makes no mention of Defendant Centurion ratifying any employee's actions. This is the only IIED allegation made against Defendant Centurion in Plaintiff's complaint.

Plaintiff argues that it did bring a claim of vicarious liability against Defendant Centurion for ratifying Defendant Spangler's actions in paragraph 138 of the complaint where she alleged "Centurion's owners and managers condoned and directly participated in the wrongful conduct." This sentence does not state such a claim for relief. There is no mention or reference in this sentence of *corporate Defendant Centurion*. This allegation is clearly against "Centurion's owners and managers" such as Defendants Spangler and Grear and not Defendant Centurion and makes no reference to any vicarious liability for Centurion itself. This stands in stark contrast from the allegation of vicarious liability made in paragraph 135 referenced above. The complaint does not contain any short plain statement of the claim that Defendant Centurion ratified Defendant Spangler's alleged tortious actions. Plaintiff cannot add allegations in its memorandum that it failed to include in its complaint. Since the complaint did not contain an allegation that Defendant Centurion ratified Defendant Spangler's alleged tortious actions, that allegation will not be considered by this Court.

### d. Count VII – Invasion of Privacy

The Plaintiff claims in Count VII that Defendant Spangler violated N.C.G.S.A. § 14-190.5A. North Carolina General Statutes Section 14-190.5A provides criminal and civil causes of action for the "disclosure of private images." N.C.G.S. § 14-190.5A(b), (g). Under N.C.G.S. § 14-190.5A, "any person whose image is disclosed, or used, as described in subsection (b) of

[N.C.G.S.A. § 14-190.5A], has a civil cause of action against any person who discloses or uses the image and is entitled to recover from the other person." N.C.G.S. § 14-190.5A(g).

A civil cause of action under N.C.G.S. § 14-190.5A "may be brought no more than one year after the initial discovery of the disclosure, but in no event may the action be commenced more than seven years from the most recent disclosure of the private image." N.C.G.S. § 14-190.5A(g). A motion to dismiss is usually not the appropriate stage at which to decide an affirmative defense, like a statute of limitations defense. *CSX Transp., Inc. v. Gilkson*, 406 Fed.Appx. 723, 728 (4th Cir. 2010) ("'a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) ... generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred'")(citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, an affirmative defense may be reached by a Rule 12(b)(6) motion to dismiss in the "rare" circumstance where "'all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Id.* (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

This claim relies upon the access of the image (at some point on or before September 19, 2015) by Defendant Spangler via unauthorized use of Plaintiff's iPad and the alleged disclosure to Plaintiff on September 19, 2015. Compl. ¶¶ 84-85. According to Plaintiff, on that date, "Spangler used his Centurion-issued telephone to text Plaintiff on her Centurion-issued telephone with nude photos of Plaintiff." Compl. ¶ 84. Thus, "the initial discovery of the disclosure" (both to Defendant Spangler and Plaintiff) by Plaintiff must have occurred on September 19, 2015. *Id.*

The Court determines that all the facts necessary to decide on whether this claim is time barred appear on the face of the complaint. The Plaintiff does not present any arguments against

the timeline outlined above in its opposition memorandum. Given that this action was not filed until January 13, 2017, Plaintiff's claim is barred by the limitations period and is dismissed. *Id.*

But, Plaintiff states that Count VII not only brought a claim against Defendant Spangler for violation of N.C.G.S. § 14-190.5A, it also contained a claim against Defendant Spangler under the "the common law for intrusion into seclusion." Doc. No. 14 at 8.

Intrusion upon seclusion, or the intrusion tort, is one of four recognized invasion of privacy claims under North Carolina common law. *Hall v. Post*, 323 N.C. 259, 263 (1988) (citing *Renwick v. News and Observer,* 310 N.C. 312, 322 (1984)). This tort is defined as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. Brooks*, 123 N.C.App. 20, 26, 472 S.E.2d 350, 354 (1996) (quoting *Smith v. Jack Eckerd Corp.*, 101 N.C.App. 566, 568, 400 S.E.2d 99, 100 (1991)).

"A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Plaintiff has failed to even provide a "formulaic recitation" of the elements of her purported claim and simply states that Defendant Spangler's alleged conducts constitutes "an invasion of privacy." Compl. ¶ 159. In her complaint, Plaintiff's entire intrusion to seclusion claim is plead in the following sentence, "[i]n addition, Spangler's acts in intruding into the seclusion of Plaintiff's private and personal iPad represented an invasion of privacy entitling Plaintiff to damages as allowed by North Carolina law." Compl. ¶ 159. This statement, the only mention of intrusion into seclusion in the entire Complaint, is not identifiable as separate from Plaintiff's statutory claim, let alone readily

recognizable as a common law invasion of privacy claim. Plus, the heading of Count VII does not indicate that the additional claim of intrusion upon seclusion is part of the allegations it contains. Plaintiff makes no assertion under Count VII that Defendant Spangler *intentionally* intruded into the seclusion of Plaintiff's personal iPad and that that intrusion would be *highly offensive to a reasonable person*. Thus, Plaintiff failed to make a short plaint statement of a claim for relief on the basis of the intrusion tort under North Carolina common law. Plaintiff cannot add allegations in its memorandum that it failed to include in its complaint.

Therefore, the Court grants Defendant's motion to dismiss Count VII as the claim for violation of N.C.G.S. § 14-190.5A is time barred. The Court further finds that Plaintiff failed to bring the claim of intrusion upon seclusion.

### e. Count VIII – Breach of Contract

The Plaintiff's claim for breach of contract stems from an agreement signed by Plaintiff and Defendant Spangler on February 20, 2015. In this written agreement, Defendant Spangler agrees to pay Plaintiff $10,000.00 in a one-time, lump-sum payment, followed by $1,000.00 per month for nine (9) months thereafter. Comp. Exh. G. The agreement also states that Defendant Spangler agreed to allow Plaintiff to remove items and personal property from three (3) houses. *Id.* These payments were agreed to by Defendant Spangler because Defendant Spangler had received "contribut[ions] to [his] life" over the past nine-and-a-half years. *Id.*

The Defendants argue that this alleged contract is void for lack of consideration. Plaintiff responds with three points: (1) lack of consideration is an affirmative defense and so cannot be adjudicated at this stage, (2) there is consideration in the form of Plaintiff's prior work done on Defendant's house(s) and the emotional support Plaintiff gave to Defendant Sterling over the

course of their nine and a half year relationship, and (3) the doctrine of equitable estoppel bars Defendants' lack of consideration claim.

"The essential elements of a valid, enforceable contract are offer, acceptance, and consideration." *Lewis v. Lester*, 760 S.E.2d 91, 92-93 (2014). Failure of consideration is an affirmative defense. Fed. R. Civ. P. 8(c). *See U.S. Cold Storage, Inc. v. City of Lumberton*, 34 Fed. App. 429, 434–35 (4th Cir. 2002). As noted previously, an affirmative defense may be reached by a Rule 12(b)(6) motion to dismiss in the "rare" circumstance where "'all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *CSX Transp*, 406 Fed.Appx. at 728 (citing *Goodman*, 494 F.3d at 464). So, if the Defendant can prove lack of consideration using the facts on the "face of the complaint," this matter can be adjudicated at this stage. *Id.*

In the complaint, Plaintiff says "Spangler would pay Plaintiff Ten Thousand Dollars ($10,000) up front and One Thousand Dollars ($1,000) per month for nine (9) months in consideration of Plaintiff's contributions to Spangler's residence(s) in the form of Plaintiff's miscellaneous personal property." Compl. ¶ 24. In other words, Plaintiff claims that Plaintiff's personal property is consideration for the money that Spangler would pay under this "contract." However, this claim cannot be reconciled with the written agreement itself, which states, "[Spangler] also agree[s] to allow Janie to get her items from all 3 houses as time and weather permits." Compl. Ex. G. Perhaps in recognition of this lack of cohesion, Plaintiff in her response memorandum instead argues that "[t]he payments made in the agreement were in lieu of (or forbearance of) other remedies the Plaintiff may have been entitled to as a tenant of the residences and for the work and personal property she had contributed to the residences." Doc. No. 14 at 10. This is the first time Plaintiff mentions "other remedies Plaintiff may have been

entitled to as a tenant of the residences." *Id*. Nowhere in the complaint does Plaintiff plead facts relating to these remedies.

The agreement, which Plaintiff attached to the Complaint, unambiguously provides the consideration in the text of the agreement. (Compl. Exh. G). In exchange for payment ($19,000.00) to Plaintiff, Defendant Spangler was to receive "contribut[ions] to [his] life" over the past nine-and-a-half years. (Compl. Exh. G).

In North Carolina, "[p]ast consideration or moral obligation is not adequate consideration to support a contract." *Lewis*, 760 S.E.2d at 93. However, "[t]his presumption can be rebutted by evidence that the party rendering the services reasonably expected compensation for those services." *Id.* (citing *Jones v. Winstead*, 186 N.C. 536, 540 (1923)). The only consideration in the alleged contract is contributions made over the past nine-and-a-half years. This is past consideration and therefore not adequate to support a contract. In this case, there is no indication that Plaintiff expected any sort of compensation for her services and, accordingly, Plaintiff's claims of consideration are without merit.

In Plaintiff's Response, Plaintiff also argues that her breach of contract should survive because "Defendant Spangler's own acts in conformance with the contract and his acceptance of Plaintiff's performance creates an equitable estoppel against him from now denying the validity of that very contract." Doc. No. 14 at 11. But, "[a] void contract will not work as an estoppel." *Bolin v. Bolin*, 99 S.E.2d 920, 923 (1957); see also *Kelley v. Kelley*, 2017 WL 1251018, at *7 (2017) (stating that "[i]t is well settled that a void contract cannot be the basis for ratification or estoppel").

Moreover, this is the first time Plaintiff raises this argument and she failed to plead the required elements for equitable estoppel in her Complaint. "A party claiming equitable estoppel must show '(1) lack of knowledge and the means of knowledge of the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.'" *Inland Const. Co. v. Cameron Park II, Ltd., LLC*, 640 S.E.2d 415, 419 (2007) (quoting from *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 556 S.E.2d 331, 336 (2001)). Looking at the complaint, the second and third elements were clearly not satisfied. Plaintiff never pled any factual allegations of reliance upon Defendant Spangler's monetary consideration. Plaintiff further does not plead factual allegations that her position has been changed prejudicially because of Defendant Spangler not paying. Accordingly, the doctrine of equitable estoppel is not applicable here.

For these reasons, the Plaintiff's claim for breach of contract is dismissed.

### IV. CONCLUSION

For the foregoing reasons the Court finds that the Defendants' Motion to Dismiss (Doc. No. 11) be **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss is granted as to all claims against Defendant Grear.

Count I is **NOT DISMISSED**. Count III is **DISMISSED** as to Defendants Spangler and Grear. The Defendants Spangler and Grear Motion for Attorney's Fees as to Count III is **GRANTED**. Count IV is **DISMISSED** as to Defendants Grear and Centurion. Count VII is **DISMISSED**. Count VIII is **DISMISSED**.

Signed: August 1, 2017

**SO ORDERED.**

Graham C. Mullen
United States District Judge